UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


WEST VIRGINIA HIGHLANDS CONSERVANCY, INC. and
OHIO VALLEY ENVIRONMENTAL COALITION, INC. and
SIERRA CLUB,

        Plaintiffs,

v.                           Civil Action No. 2:13-28801

FUND 8 DOMESTIC, LLC,

        Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>

        Pending is the defendant's motion to dismiss, filed January 10, 2014.


<u>I. Background</u>

        The plaintiffs are nonprofit organizations that espouse preservation of the environment and the responsible use of natural resources.  Plaintiff Ohio Valley Environmental Coalition ("OVEC") is a nonprofit organization incorporated in Ohio, with a principal place of business in Huntington, West Virginia, and it has roughly 1,500 members.  "Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach."  Compl. ¶ 11.  West

1

Virginia Highlands Conservancy, Inc. ("WVHC") is a West Virginia nonprofit organization, with roughly 1,700 members who "work[] for the conservation and wise management of West Virginia's natural resources."  Compl. ¶ 13.  Sierra Club is a nonprofit California corporation, with about 1,900 members residing in West Virginia.  Sierra Club advocates for the responsible use of natural resources and environmental conservation.  Compl. ¶ 12. The defendant, Fund 8 Domestic, LLC ("Fund 8"), is a Delaware limited liability company.

The plaintiffs bring a citizen suit under the Clean Water Act ("CWA"), 33 U.S.C. § 1365 (2006).  According to the plaintiffs, Fund 8 is and has been discharging pollutants into the waters of the United States without a valid National Pollution Discharge Elimination System ("NPDES") permit, 33 U.S.C. § 1342 (2006 & Supp. II 2008).  Such an act is unlawful under 33 U.S.C. § 1311(a) (2006).

More specifically, the plaintiffs accuse Fund 8 of owning lands where prior mining operations occurred, namely, the Opportunity No. 3 Surface Mine ("Opportunity Mine") and Anchor Surface Mine No. 1 ("Anchor Mine"), both in Mingo County, West Virginia.  While in operation, each of the mining ventures utilized "valley fills," wherein excess earth from the mining process is dumped in a nearby valley, often filling existing

2

waterways.  See Kentuckians for Commonwealth, Inc. v. Rivenburgh, 317 F.3d 425, 431 (4th Cir. 2003), quoting 65 Fed. Reg. 21,292, 21,295 (Apr. 20, 2000).  Valley Fill No. 1 exists at the Anchor Mine, and contains drain channels that empty into a stream at the base (or "toe") of the valley fill.  Compl. ¶ 58.  Valley Fill No. 2 empties into Ashcamp Hollow from similar drain channels.  Id. ¶¶ 30-31.  The water discharged from Valley Fill No. 1 flows into Road Branch, then Rockhouse Fork, then Pigeon Creek, then Tug Fork to the Big Sandy River.  Id. ¶ 78. The water discharged from Fill No. 2 flows through Ashcamp Hollow into Rockhouse Fork and then the same route to the Big Sandy River.  Id. ¶ 51.

Fund 8 purchased the land at issue after mining had ceased, and resold it before this litigation began.  However, the plaintiff claims that by the terms of the property conveyances, Fund 8 still owns the valley fills, and that the valley fills continue to discharge selenium into the waters of the United States.  The discharge of selenium requires an NPDES permit from the West Virginia Department of Environmental Protection ("WVDEP").  The NPDES permits issued for the prior mining activity on these sites have expired.  33 U.S.C. § 1342 (2006 & Supp. II 2008); Compl. ¶¶ 39, 65.

The plaintiffs took two measurements of the selenium

3

content.  One was a sample of water downstream of the discharge
of Valley Fill No. 1 but before reaching the first of two
sediment pools (used during mining to treat the water but not
removed after mining ceased) and showed a concentration of 6.86
µg/L.  Compl. ¶ 71.  The second was taken about three-fourths of
a mile downstream from Valley Fill No. 2 before its confluence
with Rockhouse Fork, and showed a concentration of 3.51 µg/L.
Compl. ¶ 45, 47.

The plaintiffs do not name any one specific member
that has been harmed, but generally state that their members

> suffer injuries to their aesthetic, recreational,
> environmental, and/or economic interests as a result of
> Defendant's unlawful discharges of pollutants.  Plaintiffs'
> members fish, swim, observe wildlife, and/or otherwise use
> the waters affected by Defendant's discharges and are
> harmed by the pollutants that Defendant is discharging.
> Plaintiffs' members refrain from swimming, wading, fishing,
> and/or engaging in other activities in and around the
> streams affected by Defendant's discharges to avoid
> exposure to pollutants.  Plaintiffs' members are also very
> concerned about the impacts of pollution from Defendant's
> discharges on their friends and neighbors and on local
> wildlife.

Compl. ¶ 14.  The plaintiffs request declaratory and injunctive
relief in the form of declaring a CWA violation and enjoining
further discharge until the defendant obtains a permit.  They
also request an order compelling the defendant to conduct
environmental monitoring, and civil fines.

In its motion to dismiss, Fund 8 makes three separate

4

arguments:  (1) there is no standing because the plaintiffs have
not alleged an injury in fact nor have they alleged that any
relief would redress their injuries; (2) Fund 8 only purchased
surface rights and never owned the valley fills, and, in any
event, has sold every interest they have in the property; and
(3) the plaintiffs have not sufficiently pled an ongoing
discharge of pollutants into waters of the United States, as
those terms are understood in the law.  In response, the
plaintiffs insist that standing exists.  Plaintiffs also
question the effect of the property conveyances by which Fund 8
claims it has divested itself of ownership; and plaintiffs
contend that the actions of Fund 8 constitute the discharge of
pollutants into the waters of the United States.


## II. Standard of Review

Under Fed.R.Civ.P. 8(a)(2), the complaint must contain
"a short and plain statement of the claim showing that the
pleader is entitled to relief."  Rule 12(b)(6) correspondingly
permits a defendant to challenge a complaint when it "fail[s] to
state a claim upon which relief can be granted."  Fed. R. Civ.
P. 12(b)(6).

The required "short and plain statement" must provide
"'fair notice of what the . . . claim is and the grounds upon

which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).  Facial plausibility exists when the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

In assessing plausibility, the court must accept as true the factual allegations contained in the complaint, but not the legal conclusions.  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  The determination is "context-specific" and requires "the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

6

The plaintiffs have the burden of establishing standing.  Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC, 713 F.3d 175, 181 (4th Cir. 2013).  "When standing is challenged on the pleadings, [the court] accept[s] as true all material allegations of the complaint and construe[s] the complaint in favor of the complaining party."  David v. Alphin, 704 F.3d 327, 333 (4th Cir. 2013).  In examining standing the court will "consider exhibits attached to the complaint in addition to the complaint itself."  Southern Walk, 713 F.3d at 182; Fed.R.Civ.P. 10(c). But factual allegations that are "legal conclusions" or "naked assertions" do not need to be accepted.  David, 704 F.3d at 333 (quoting Iqbal, 556 U.S. at 678).  The court cannot create jurisdiction by "embellishing" pleadings that are deficient with regard to standing.  Southern Walk, 713 F.3d at 182 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155-56 (1990))

### III. Analysis

#### A. Standing

The plaintiffs are all organizations.  Organizations have standing to sue either when the organization itself is injured or when the organization acts as the representative of its members who would have standing to sue in their own right. Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 629

F.3d 387, 396-397 (4th Cir. 2011).  See also Warth v. Seldin,
422 U.S. 490, 511 (1975).  The plaintiffs allege no separate
injury to their organizations apart from the injuries sustained
by their members, and therefore the plaintiffs' standing must,
if at all, be in a representational capacity.  See, e.g., Simon
v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976).

          Representational standing rests in an organization
when: (1) at least one of its members has standing to sue in his
or her own capacity, (2) the interests sought to be protected
through litigation are "germane to the organization's purpose",
and (3) "neither the claim asserted nor the relief sought
requires the participation of individual members in the
lawsuit."  NRDC v. Watkins, 954 F.2d 974, 978 (4th Cir. 1992).
What is contested here is whether plaintiffs' members would have
standing in their own right.

          Article III of the Constitution imposes limits on who
may bring suits in federal court.  To present a case or
controversy under Article III, (1) a plaintiff must have
sustained an injury-in-fact, (2) that injury must be "fairly . .
. trace[able] to the challenged action of the defendant," and
(3) it must be likely that the injury will be redressable
through a favorable decision by the court.  Lujan v. Defenders
of Wildlife, 504 U.S. 555, 560-561 (1992) (quoting Simon, 426

U.S. at 41-42).  The defendant challenges the existence here of
the first and third prongs of this test, that is, injury-in-fact
and redressability.

        The defendant faults the complaint for alleging a harm
that is not "concrete and particularized . . . and . . . actual
or imminent, not conjectural or hypothetical."  Lujan, 504 at
560 (internal quotation marks omitted).  In particular, the
defendant argues that the plaintiffs have not alleged a
sufficient nexus between their members and the alleged injurious
activity.  The court agrees.  Nowhere have the plaintiffs
specifically identified any member that has been affected by
this particular activity.  Both the Fourth Circuit and the
Supreme Court have determined that organizations suing in a
representative capacity must "make specific allegations
establishing that at least one identified member had suffered or
would suffer harm."  Summers v. Earth Island Inst., 555 U.S.
488, 498 (2009) (emphasis supplied); Southern Walk, 713 F.3d at
184.  To comply with this directive, the plaintiffs must name a
specific member and detail how he or she has been injured.
Summers, 555 U.S. at 498-99; Southern Walk 713 F.3d at 185.[1]

---

[1] There is an exception to this identification requirement.  When
"all the members of the organization are affected by the
challenged activity," there is no need to identify a specific
member that was harmed.  Summers, 555 US at 499; NAACP v.
Alabama ex rel. Patterson, 357 U.S. 449, 459 (1958)(release of

They have not done so.  The court also notes that it makes no difference that the plaintiffs sue under the citizen-suit provision of the CWA; the injury-in-fact requirement "is a hard floor of Article III jurisdiction that cannot be removed by statute."  Summers, 555 U.S. at 497; see also WildEarth Guardians v. Jewell, 738 F.3d 298, 305 (D.C. Cir. 2013).

Consequently, the plaintiff organizations have not alleged a sufficient injury-in-fact to confer standing.  Article III standing is requisite to the court's subject matter jurisdiction, and when standing does not exist, the court must dismiss the matter without prejudice.  Southern Walk, 713 F.3d at 185.  Because the court has determined that there is no standing, the court lacks subject matter jurisdiction and is without authority to consider the other issues raised.  See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998); Southern Walk, 713 F.3d at 185 n.4.

---

membership lists harmed all members).  But none of the plaintiffs allege here that all of their geographically far-flung members were so harmed.  See Southern Walk, 713 F.3d at 184-85.

<u>IV.</u>

For the reasons stated, it is ORDERED that this case be, and it hereby is, DISMISSED in its entirety without prejudice for lack of jurisdiction.  It is further ORDERED that this case be removed from the active docket of this court.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

ENTER:  June 17, 2014

John T. Copenhaver, Jr.
United States District Judge